UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD KEAL *et al.*,

    Plaintiffs,

v.

THE STATE OF WASHINGTON, *et al.*,

    Defendants.

Case No. C05-5737RJB

REPORT AND RECOMMENDATION REGARDING DEFENDANT PHYLLIS ELLIS

**NOTED FOR:**
**February 16, 2007**

    This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. Before the court is a motion for summary judgment filed by defendant Phyllis Ellis (Dkt. # 201). Plaintiff has responded (Dkt. # 217). Defendant Ellis has replied (Dkt. # 220). The motion is ripe for review.

FACTS

    These facts are undisputed. On March 30, 2005 at approximately 6:00 A.M. Ms. Mallogue was working "medicine call" at the Clallam Bay Corrections Center Intensive Management Unit

REPORT AND RECOMMENDATION - 1

1  (Dkt. # 193, page 2, Affidavit of Heidi Mallogue). Mr. Keal requested medicine for what he
2  described as a migraine headache.

3  According to Ms. Mallogue, Mr. Keal had not followed the proper procedure for obtaining
4  treatment at the 6:00 A.M. visit and she told him she was not able to provide the non prescription
5  item right then. In her affidavit she states she told him she would make a note of his request and he
6  would receive treatment at approximately noon (Dkt. # 193).

7  At 10:50 that same day Ms. Mallogue received a call for assistance from the Intensive
8  Management Unit, IMU (Dkt. # 193, page 2 Affidavit of Heidi Mallogue). She arrived at the IMU
9  within minutes of the call to find Mr. Keal "on the floor in a supine position." Pursuant to policy,
10 security staff secured Mr. Keal with hand and leg restraints prior to his receiving medical treatment.
11 Defendant Mallogue performed an initial examination which included checking Mr. Keal's heart rate,
12 checking his pulse at the carotid artery, checking for breathing and his rate of breathing, and placing
13 a soft backed book under Mr. Keal's head until a pillow arrived (Dkt. # 193, page 3, Affidavit of
14 Heidi Mallogue). The assertions in Ms. Mallogue's affidavit are supported by a video tape of the
15 incident submitted to the court by plaintiffs (Dkt. # 148, exhibit 8, on file in clerk's office).

16 Ms. Mallogue states Mr. Keal was non responsive to questions or "verbal stimulation." (Dkt.
17 # 193, page 3). Ms Mallogue noted Mr. Keal had slight spontaneous shoulder movement and
18 occasional twitching movement in his hands. Id. Information from the Correctional Officers who
19 had observed Mr. Keal before Ms. Mallogue arrived informed her that Mr. Keal had been twitching
20 rapidly, arching his back and that he had been "exhibiting a series of rapid rigid upper body motion."
21 Id.

22 Ms. Mallogue's assessment of the situation was that Mr. Keal was not suffering from grand
23 mal seizure, but she called for a more experienced medical provider, defendant Ellis, and a gurney to
24 transport Mr. Keal to the clinic. Defendant Ellis repeated the examination performed by Defendant
25 Mallogue and formed the opinion that Mr. Keal was not suffering from a seizure. Mr. Keal was still
26 transported to the clinic for observation. During transport to the clinic Mr. Keal began spitting and a
27 spit sock was placed on him for safety and security reasons. Follow up assessment by several
28 REPORT AND RECOMMENDATION - 2

1  medical providers, and the testimony of an expert witness, is that Mr. Keal did not suffer from a
2  seizure and was faking his seizure or suffering a "pseudo seizure." (Dkt. # 195, 196, and 197).
3      Mr. Keal brings an action for violation of his Eighth Amendment right to be free from cruel
4  and unusual punishment. Plaintiff claims the medical treatment provided by Ms. Ellis for his alleged
5  seizure was inadequate because she allowed custody staff to place him in restraints, and she did not
6  turn him to his side to prevent the possibility of his choking on vomit (Dkt. # 217, page3). Further
7  he alleges the treatment was inadequate because Ms. Mallogue did not place a pillow under his head
8  and allowed a spit sock to be placed on him during transport to the clinic (Dkt. # 217, page 3).
9  Plaintiff also alleges he received inadequate medical care from this defendant for a number of other
10 conditions, but, he provides no details either in his documentation or exhibits showing that defendant
11 Ellis treated him other than on March 30, 2005 (Dkt. # 217 exhibits).
12     Mr. Keal also alleges defendant Ellis is liable for other medical treatment. Mr. Keal has failed
13 to come forward with any specific evidence showing this defendant treated him (Dkt. # 217 and 218,
14 exhibits).

15                                      DISCUSSION
16     A.    <u>The standard of review</u>.
17     Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,
18 depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that
19 there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of
20 law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the
21 nonmoving party fails to make a sufficient showing on an essential element of a claim on which the
22 nonmoving party has the burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1985).
23     There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a
24 rational trier of fact to find for the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>.,
25 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not
26 simply "some metaphysical doubt."). <u>See also</u> Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute
27 over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring
28 REPORT AND RECOMMENDATION - 3

a judge or jury to resolve the differing versions of the truth. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630. (relying on <u>Anderson</u>, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).

      B.    <u>The Eighth Amendment standard for medical care</u>.

The government has an obligation to provide medical care for prisoners, and the Eighth Amendment proscribes deliberate indifference to their serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), Such conduct is actionable under 42 U.S.C. § 1983. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992).

In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. <u>McGuckin</u>, at 1060. A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a section 1983 claim. <u>Franklin v. Oregon, State Welfare Div</u>., 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). Second, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. <u>McGuckin</u>, at 1060; <u>Shapely v. Nevada Bd. of State Prison Commissioner's</u>, 766 F.2d 404, 407 (9th

REPORT AND RECOMMENDATION - 4

1  Cir. 1985).

2       An Eighth Amendment Claim has two components. The first component is the objective

3  element that the deprivation was serious. <u>Young v. Quinlan</u>, 960 F.2d 351, 359 (3rd Cir. 1992).

4  The second is a subjective element--that a prison official acted with deliberate indifference. <u>Young</u>,

5  960 F.2d at 359-60.

6       To constitute deliberate indifference, an official must know of and disregard an excessive risk

7  to inmate health or safety; the official must be aware of facts from which the inference could be

8  drawn that a substantial risk of serious harm exists; and the official must also draw the inference.

9  <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

10      C.    <u>Analysis</u>.

11      1.    <u>Alleged seizure March 30, 2005.</u>

12       Mr. Keal's claims regarding use of restraints and the spit shield or spit sock being placed over

13  his head fails. Mr. Keal fails to show the placement of these items on him caused him any harm or

14  injury. Given medical personnel's concern or opinion that Mr. Keal may have been faking his

15  seizure, the application of restraints prior to having non security personnel come in close contact

16  with him was reasonable. Mr. Keal fails to show placing a spit shield or spit sock on him violated

17  any right or duty owed to him given the allegation that Mr. Keal began spitting during his transport

18  to the clinic. Mr. Keal has not denied or contradicted this allegation with any competent evidence.

19       Even if the court assumes the placement of restraints and spit sock to be sufficiently serious

20  to state a claim, Plaintiffs fail to show that any prison official drew an inference that there was

21  substantial risk to the plaintiff. In fact, the medical providers and their expert all express the opinion

22  that Mr. Keal was not having a grand mal seizure. Ms Ellis examined Mr. Keal and memorialized her

23  exam and diagnosis. In her notes she stated:

24      EXAM:    Inmate was on the day room floor. He displayed no
     incontinence. Individual had not vomited. He showed
25                no sign of 'foaming' from mouth or gaging. He
     remained extremely rigid. When asked a question or
26                when I tried to check his pupils (open his tight shut
     eyes), he would rigidly posture and then wildly flail his
27                body in an arched position for 15 to 20 seconds, and

28  REPORT AND RECOMMENDATION - 5

|   |   |
|---|---|
| 1 | then would return to a quiet state with mild shaking. |
| 2 | Mr. Keal was bought to Medical on a litter. He quickly stopped shaking ( within 10 to 15 minutes). He was then placed in an observation room (which he walked to without difficulty). |
| 5 | Individual was fully alert; showed no sign of confusion and walked back to IMU without difficulty. |
| 6 | Diagnosis:    Psuedoseizure/malingering. |

(Dkt. # 196).

Defendants' medical expert, Dr. Doherty, states "it is not likely that Ronald Keal suffered a 'grand mal seizure' or set of seizures on March 30, 2005." (Dkt. # 195). Dr. Doherty states his opinion that the duration of the activity was too long, the fall to the ground was too "slow," there was no noticeable "tonic" or "clonic" phase to Mr. Keal's alleged seizure, no loss of continence, no tongue biting, and the movements depicted on the video were not what he would expect from grand mal seizure (Dkt. # 195). Dr. Doherty also notes that defendant Mallogue assessed Mr. Keal using the "ABC's" Airway, Breathing, Circulation. Thus, Mr. Keals' concerns of choking on vomit were addressed in the initial examination and his airway was clear.

Dr. Doherty emphasized it was rare for grand mal seizure to last more than 90 seconds and Mr. Keals' event lasted for longer than 10 minutes (Dkt. # 195). In his opinion it is "extremely common that psychogenic events and psychological nonepiliptiform events or malingering events occur for period [sic] longer than 90 seconds." (Dkt. # 195).

Defendant John Joseph evaluated Mr. Keal at the clinic after he was transported and his medical diagnosis was that Mr. Keal was "faking a seizure" and had "feigned medical problems." (Dkt. # 197. His plan of action was to infract Mr. Keal for his behavior (Dkt. # 197).

Mr. Keal has presented the court with two unsworn statements. One statement is from a Lucia Wakeen, and one is from Margie Messinger. Both persons claim to be in the medical field with a number of years experience (Dkt. # 218, exhibits 5). Defendant objects to these exhibits (Dkt. # 220, page 2). The basis for the objection is that the statements are not statements under oath.

The court has considered the Curnow case and the holding of the court is that any evidence

REPORT AND RECOMMENDATION - 6

allowed by Fed. R. Civ. P 56 (c) may be considered.  <u>Curnow v. Ridgecrest Police</u>, 952 F. 2d 321, 323 (9th Cir. 1991).  Fed. R. Civ. P 56 (c) allows the court to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  Defendant Ellis is correct in stating that unsworn statements cannot be considered.  The statements of Lucia Wakeen and Margie Messinger will not be considered.  Even if the statements were properly before the court it would not change the outcome.  Neither person addresses nor considers that the providers on scene evaluated Mr. Keal and determined he was not having a grand mal seizure.  Further, Mr. Keal has come forward with no evidence to show any injury.

The court notes Mr. Keal has also presented several witness statements from inmates who allegedly observed the incident on March 30, 2005 (Dkt. # 217, Exhibit 3).  These statements are sworn to under penalty of perjury.  Each of these witnesses claims Mr. Keal vomited during the time he was in the day room on the floor, prior to Defendant Mallogue's arrival, however review of the video tape does not show Mr. Keal vomiting.  Further close observation of Mr. Keal's clothing, a white jumpsuit, does not show any noticeable vomit present on the outfit.

The court is not free to weigh the evidence.  However, even assuming Mr. Keal did vomit the record discloses Defendant Mallogue checked the airway and breathing rate and found Mr. Keal was not in distress.  Further, defendant Ellis states in her examination notes, that she did not observe Mr. Keal to have vomited.  Thus, she was not deliberately indifferent under the standard set forth in <u>Farmer</u>.  <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

While Mr. Keal alleges defendant Ellis was deliberately indifferent in the medical treatment she provided to him for other conditions, he has placed no evidence before the court to show that defendant Ellis ever provided any other treatment to him. The object of the summary judgment provision "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." <u>Lujan v. National Wildlife</u> Federation, 497 U.S. 871, 888 (199)) Cf. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 249 (1986).

In the motion for summary judgment, defendant Ellis specifically informed plaintiff her motion for summary judgment was based in part on plaintiff's failure to come forth with "specific,

REPORT AND RECOMMENDATION - 7

significant probative evidence" to demonstrate that a material issue of fact exists as to the essential elements of these additional negligence claims (Dkt. # 201, page 4). Plaintiff has failed to present any evidence showing that defendant Ellis treated him for any other condition.  This defendant is entitled to summary judgment as a matter of law.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 16 2007**, as noted in the caption.

DATED this 8 day of January, 2007.

> */S/ J. Kelley Arnold*
> J. Kelley Arnold
> United States Magistrate Judge

REPORT AND RECOMMENDATION - 8