UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD AND DEBORAH KEAL,

    Plaintiffs,

    v.

STATE OF WASHINGTON, *et al.*,

    Defendants.

Case No. C05-5737RJB

ORDER ADOPTING THE REPORT AND RECOMMENDATION AND GRANTING DEFENDANT MALLOGUE'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on the Report and Recommendation Regarding Defendant Heidi Mallogue[1] (Dkt. 234). The Court has considered the Report and Recommendation, the plaintiffs' objections (Dkt. 241), and the remainder of the file herein.

## I. BACKGROUND

The Report and Recommendation recommends that Defendant Malloque's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Dkt. 192) be granted and that the claims against Ms. Malloque be dismissed with prejudice. Dkt. 234. The plaintiffs object to the Report and Recommendation on several grounds. Dkt. 241-1.

---

[1] In the caption, the defendant's name is spelled "Mallogue." In the defendant's affidavit, it is spelled "Malloque." The Court uses the defendant's spelling.

ORDER
Page 1

## II. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

ORDER
Page 2

**B. VIDEOTAPE EVIDENCE**

The plaintiffs submitted a videotaped recording of the March 30, 2005 incident, and the Court has reviewed this evidence and construed it in the light most favorable to the plaintiffs. *See* Dkt. 148, Exh. 8. As the plaintiffs point out, a significant time period is missing from the recording. *See* Dkt. 241-1 at 2. The Court notes that the recording appears to be dated "3/23/05" rather than March 30, 2005, but the parties apparently do not contest whether the videotape is a recording of the event in question. The recording is comprised of a fractured series of frames, making it difficult to assess Mr. Keal's body movements. The Court has therefore found this evidence of limited assistance in evaluating the merits of the defendant's motion.

**C. EIGHTH AMENDMENT**

An Eighth Amendment claim based on prison medical treatment requires proof of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In the Ninth Circuit, the test for deliberate indifference consists of two parts: (1) proof of a serious medical need such that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) a deliberately indifferent response. *Id.* Plaintiffs can satisfy the second prong with proof of (a) a purposeful act or a failure to respond to a prisoner's pain or possible medical need and (b) harm caused by such indifference. *Id.* A merely inadvertent or negligent failure to provide adequate medical care is insufficient. *Id.*

**1. Denial of Medication**

The plaintiffs contend that Mr. Keal was improperly denied migraine medication before his alleged seizure began. Dkt. 241-1 at 3. The Report and Recommendation notes that on March 30, 2005, at approximately 6:00 a.m., Mr. Keal requested non-prescription medication for a migraine headache. Dkt. 234-1 at 2. According to Ms. Malloque, Mr. Keal did not follow the proper procedure for obtaining non-prescription medication at the 6:00 a.m. visit and was told that he would receive treatment at noon. Dkt. 193 at 2. The plaintiffs contend that Mr. Keal requested Midrin pursuant to a prescription. Dkt. 241-1 at 3.

The Court notes that in the Complaint, Amended Complaint, and the response to the Motion for Summary Judgment, the plaintiffs did not contest Ms. Malloque's treatment of Mr. Keal before the onset of the alleged seizure. *See* Dkt. 8 at 7, Dkt. 183 at 17, Dkt. 218. The Report and Recommendation therefore does not address this particular allegation.

Resolving all factual disputes in favor of the plaintiffs, the plaintiffs do not demonstrate that Mr. Keal's migraine headache constituted a serious medical need that if left untreated, could have resulted in further significant injury or the unnecessary and wanton infliction of pain. The plaintiffs attempt to meet this burden by offering several exhibits. *See* Dkt. 241-1 at 3 ("But for the fact that medical denied Mr. Keal his migraine medication he may not have had the seizures. See; [sic] (Exhibits 1-5)."). These exhibits do not create a genuine issue of material fact. Exhibits one through five appear to be computer printouts of internet sites. Without proof that these documents "would be admissible in evidence" as required by Federal Rule of Civil Procedure 56(e), the Court should not consider these exhibits. Exhibit six (statements addressed in more detail below) does not demonstrate that migraine headaches, if left untreated, could result in a seizure. The Court should therefore hold that the plaintiffs fail to withstand the motion for summary judgment in this regard.

**2. Spit Sock**

The plaintiffs contend that use of a spit sock violated Mr. Keal's rights under the Eighth Amendment. Dkt. 241-1 at 3. Specifically, the plaintiffs contend that "[t]he spit sock [] placed over Mr. Keal's head d[id] not allow medical staff to be able to do a visual examination nor to see if Mr. Keal [wa]s choking on his own spit/vomit, which put Mr. Keal at risk of sufficiati[on]." *Id.* at 4. In support of this contention, the plaintiffs offered statements from inmates who allegedly observed the incident. One of these statements is written in Spanish. The plaintiffs did not provide a translation, but the Court understands the contents of the statement. *See* Dkt. 217-2, Exh. 3 at 10 (Spanish statement). Three of these statements are signed under penalty of perjury. *See id.* at 6-9, 11-13. The plaintiffs also point to the videotape as evidence that Mr. Keal may have had vomit on his face. Dkt. 241-1 at 6.

ORDER
Page 4

1  The Court notes that of these witnesses, only two mention vomiting in their statements.
2  David Chuyeshkou does not contend that he witnessed Mr. Keal vomit. Instead, he contends that
3  Correction Officer Prose told Mr. Chuyeshkou's neighbor that the there was vomit in the day room.
4  Dkt. 217-2, Exh. 3 at 7. Viewed in the light most favorable to the plaintiffs, this statement does not
5  demonstrate that Mr. Keal vomited. Randy Vance[2] does state that he personally witnessed Mr. Keal
6  vomit. *Id.* at 8. From the narrative provided, it appears that this occurred before Mr. Keal was
7  transported and placed in the spit sock. Based upon a review of the videotape, it does not appear that
8  there was vomit on Mr. Keal's face or clothing or on the floor. More importantly, the plaintiffs offer
9  no evidence that Mr. Keal actually choked and therefore fail to create a genuine issue of material fact
10 as to whether Mr. Keal had a serious medical need in this regard.

11  Even if the plaintiffs could establish a serious medical need, they fail to demonstrate that Ms.
12 Malloque was deliberately indifferent to such a need. The Report and Recommendation notes that
13 Ms. Malloque assessed Mr. Keal's breathing rate when she first arrived at the scene of the alleged
14 seizure, but Ms. Malloque's affidavit does not explain what steps she took to prevent Mr. Keal from
15 choking after he was placed in the spit sock. *See* Dkt. 193 (Malloque affidavit). The Report and
16 Recommendation states that the plaintiffs cannot demonstrate that Ms. Malloque was deliberately
17 indifferent to the risk that Mr. Keal may choke on his own vomit because "Malloque has stated she
18 did not notice any vomit." Dkt. 234 at 7. The Motion for Summary Judgment contends that
19 "[d]uring the time that Ms. Malloque was treating and/or observing Mr. Keal she did not see him
20 vomit or see any indications that he had previously vomited during his alleged seizure." Dkt. 192-1 at
21 4. The motion cites paragraphs 7 and 8 of Ms. Malloque's affidavit as evidence for this statement.
22 This portion of the affidavit is as follows:

> 7. Within a short time, PAC Ellis arrived and provided medical assistance for about five
> minutes until a gurney arrived from the clinic. Mr. Keal was then secured and placed on the
> gurney and transported to a clinic for continued assessment and observation.
>
> 8. During transportation, plaintiff began spitting and, for safety and security, a spit shield was

---

[2] It is difficult to discern, from the handwritten statement, the proper spelling of this individual's last name.

ORDER
Page 5

> placed on him. I observed him opening his left eye. He appeared to be looking around his surroundings and then I observed additional twitching episodes, off and on.

Dkt. 193 at 3. The affidavit does not state whether Ms. Malloque saw Mr. Keal vomit or saw any indications that he had vomited. Nevertheless, the Court agrees that the plaintiffs offer no subjective evidence that Ms. Malloque was deliberately indifferent. The Court should therefore grant the motion in this respect.

### 3. Restraints

The plaintiffs contend that Mr. Keal suffered injury as a result of handcuffs and restraints. Specifically, the plaintiffs contend that Mr. Keal suffered back and head injuries and lacerations to his ankles and wrists. *Id.* at 3. The plaintiffs offer no evidence that these injuries were sufficiently serious to constitute a serious medical need and therefore cannot withstand the motion for summary judgment on this basis.

### 4. Seizure

The plaintiffs contest the opinion of Dr. Michael J. Doherty, who reviewed the videotape of the event. Dkt. 195 at 3. Dr. Doherty concluded that it was unlikely that Mr. Keal suffered a seizure because Mr. Keal's fall to the ground was slow, there was no obvious clonic or tonic phase, Mr. Keal's eyes were shut, the alleged seizure lasted much longer than a typical seizure (ninety seconds), and Mr. Keal was able to walk without assistance soon after the alleged seizure. Dkt. 195 at 3-4. To rebut this opinion, the plaintiffs contend that Mr. Keal suffered several seizures, that the first seizure only lasted ninety seconds, and that Mr. Keal's fall to the ground was only three seconds. Dkt. 241-1 at 4. These factual allegations do not contradict Dr. Doherty's opinion and do not create a genuine issue of material fact precluding summary judgment.

In addition, Dr. Doherty's opinion is consistent with evaluations of Mr. Keal after the event. Defendant Phyllis Ellis is a certified physician's assistant who observed and treated Mr. Keal after the alleged seizure and diagnosed his condition as "pseudoseizure/malingering." Dkt. 196 at 2. John Joseph, an advanced registered nurse practitioner, also concluded that Mr. Keal had not truly

ORDER
Page 6

suffered a seizure, but it is unclear whether this conclusion is based upon John Joseph's observation of Mr. Keal or upon a review of another nurse's notes. *See* Dkt. 197. This evidence, when viewed as a whole, leaves no genuine issue of material fact as to whether Mr. Keal suffered a seizure.

### 5. Care During and After Seizure

The plaintiffs object to the Report and Recommendation, contending that Ms. Malloque did not exercise the requisite level of care during and after Mr. Keal's alleged seizure. Specifically, the plaintiffs contend that Mr. Keal was not examined after the seizure, that Ms. Malloque's check of Mr. Keal's airway was merely "cursory," and that Ms. Malloque did not exercise proper care by cradling Mr. Keal's head. Dkt. 241-1 at 5, 10. These contentions are not supported by the facts. Ms. Malloque "examined [Mr. Keal], checked his heart rate, assessed his carotid pulse, assessed his breathing rate and tactile and verbal stimulation, and placed a soft backed book under his head as padding until a pillow arrived." Dkt. 193 at 3. After the alleged seizure, Mr. Keal was seen by Phyllis Ellis and John Joseph. *See* Dkt. 196, 197. The plaintiffs fail to establish that Ms. Malloque's treatment of Mr. Keal during and after the alleged seizure constitutes deliberate indifference to a serious medical need.

### 6. Statements of Lucia Wakeen and Margie Messinger

In support of their opposition to the Motion for Summary Judgment, the plaintiffs offered the unsworn statements of Lucia Wakeen, LPN and Margie Messinger, CNA. The Report and Recommendation concluded that these statements should not be considered because they were unsworn. Dkt. 234-1 at 7. The Report and Recommendation also concludes that consideration of the statements would not change the outcome because the statements do not "address[] or consider[] that the providers on scene evaluated Mr. Keal and determined he was not having a grand mal seizure." *Id.*

In support of their objections, the plaintiffs again offer statements from Lucia Wakeen, LPN and Margie Messinger, CNA. *See* 241-2, Exh. 6. These statements are signed under penalty of perjury. *Id.* According to the statements, Lucia Wakeen and Margie Messinger both reviewed a

ORDER
Page 7

1  videotape of the event and are of the opinion that Mr. Keal suffered a seizure. *See id.* The plaintiffs
2  fail to demonstrate that these individuals are qualified to diagnose seizures. Moreover, these opinions
3  are not supported by the treatment providers who actually evaluated Mr. Keal during and after the
4  incident. Finally, even if this evidence were sufficient to establish the first prong of the plaintiffs'
5  claim, a serious medical need, it does not demonstrate that Ms. Malloque acted with deliberate
6  indifference. The Court should therefore adopt the Report and Recommendation in this regard.

**D. PLAINTIFF DEBORAH KEAL'S CLAIMS**

On September 26, 2006, the Court adopted the Report and Recommendation of Magistrate Judge J. Kelley Arnold and dismissed all of Ms. Keal's claims against Ms. Malloque. Dkt. 175. The plaintiffs were allowed to amend their complaint. The allegations against Ms. Malloque in the Amended Complaint are nearly identical to those in the Complaint. *See* Dkt. 8 at 7, Dkt. 183-1 at 17. The Court should therefore grant the motion as to Ms. Keal's claims against the defendant.

## III. ORDER

The Court, having reviewed the file the Report and Recommendation of Magistrate Judge J. Kelley Arnold (Dkt. 234), the plaintiffs' objections to the Report and Recommendation, and the remaining record, does hereby find and **ORDER**:

(1)     The Court adopts the Report and Recommendation (Dkt. 234);

(2)     Defendant Malloque's motion for summary judgment is **GRANTED**; and

(3)     Defendant Malloque is dismissed from this action with prejudice.

The Clerk is directed to send copies of this Order to plaintiffs, counsel for any defendants who have appeared, and to the Hon. J. Kelley Arnold.

DATED this 14th day of February, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER
Page 8