1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD AND DEBORAH KEAL,

          Plaintiffs,

      v.

STATE OF WASHINGTON, *et al.*,

          Defendants.

Case No. C05-5737RJB

ORDER ADOPTING THE REPORT
AND RECOMMENDATION AND
GRANTING DEFENDANT PHYLLIS
ELLIS'S MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on the Report and Recommendation Regarding

Defendant Phyllis Ellis (Dkt. 235). The Court has considered the Report and Recommendation, the

plaintiffs' objections (Dkt. 242), and the remainder of the file herein.

## I. BACKGROUND

The plaintiffs' allegations against Ms. Ellis are as follows:

Phyllis Ellis is a health care provider who was directly responsible for refusing to properly or
adequately treat MR. KEAL for hypoglycemia, severe allergic reactions, blood in urine, and
other related medical problems. Between 7-25-03 to 11-19-03 when on 11-17-03 he suffered
a severe neck injury. Also responsible for failing to treat his neck and hip injuries along with
the prior conditions upon his return from 12-26-04 up until 9-12-05 as his diet card was
taken for a supplement without a dietitians [sic] screening causing extreme loss of weight and
complications of bodily functions and is responsible for the daily medical care of inmates. On
3-30-05, MR. KEAL had a number of grand mal seizures as the defendants stood around
joking and laughing. Afterwards all staff refused to touch MR. KEAL or even examine him
for injuries, showing distinct malice, medical indifference, negligence, and malpractice.
Defendant acted under the Color of State law, the legitimacy of the Government and were

ORDER
Page 1

[sic] purporting to act thereunder, violating plaintiff(s) 8th and 14th U.S. Constitutional
Amendment Right(s) and is being sued in his/her official and individual capacity.

Dkt. 183 at 15. The Report and Recommendation recommends that Defendant Ellis's Motion for

Summary Judgment (Dkt. 201) be granted and that the claims against Ms. Ellis be dismissed with

prejudice. Dkt. 235. The plaintiffs object to the Report and Recommendation on several grounds.

Dkt. 242.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

make a sufficient showing on an essential element of a claim in the case on which the nonmoving

party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no

genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of

fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply

"some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a

judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).

The determination of the existence of a material fact is often a close question. The court must

consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*,

809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving

party only when the facts specifically attested by that party contradict facts specifically attested by

ORDER
Page 2

1  the moving party. The nonmoving party may not merely state that it will discredit the moving party's

2  evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

3  *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in

4  affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*,

5  497 U.S. 871, 888-89 (1990).

6  **B. VIDEOTAPE EVIDENCE**

7      The plaintiffs submitted a videotaped recording of the March 30, 2005 incident, and the

8  Court has reviewed this evidence and construed it in the light most favorable to the plaintiffs. *See*

9  Dkt. 148, Exh. 8. As the plaintiffs point out, a significant time period is missing from the recording.

10  *See* Dkt. 242 at 2. The Court notes that the recording appears to be dated "3/23/05" rather than

11  March 30, 2005, but the parties apparently do not contest whether the videotape is a recording of the

12  event in question. The recording is comprised of a fractured series of frames, making it difficult to

13  assess Mr. Keal's body movements. The Court has therefore found this evidence of limited assistance

14  in evaluating the merits of the defendant's motion.

15  **C. EIGHTH AMENDMENT**

16      An Eighth Amendment claim based on prison medical treatment requires proof of "deliberate

17  indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In the

18  Ninth Circuit, the test for deliberate indifference consists of two parts: (1) proof of a serious medical

19  need such that failure to treat the condition could result in further significant injury or the

20  unnecessary and wanton infliction of pain and (2) a deliberately indifferent response. *Id.* Plaintiffs can

21  satisfy the second prong with proof of (a) a purposeful act or a failure to respond to a prisoner's pain

22  or possible medical need and (b) harm caused by such indifference. *Id.* A merely inadvertent or

23  negligent failure to provide adequate medical care is insufficient. *Id.*

24      **1. Spit Sock**

25      The plaintiffs contend that use of a spit sock violated Mr. Keal's rights under the Eighth

26  Amendment. Specifically, the plaintiffs contend that "[t]he spit sock [] placed over Mr. Keal's head

27

28  ORDER
    Page 3

1   d[id] not allow medical staff to be able to do a visual examination nor to see if Mr. Keal [wa]s

2   choking on his own spit/vomit, which put Mr. Keal at risk of sufficiati[on] [sic]." Dkt. 242 at 4. In

3   support of this contention, the plaintiffs offered statements from inmates who allegedly observed the

4   incident. One of these statements is written in Spanish. The plaintiffs did not provide a translation,

5   but the Court understands the contents of the statement. *See* Dkt. 217-2, Exh. 3 at 10 (Spanish

6   statement). Three of these statements are signed under penalty of perjury. *See id.* at 6-9, 11-13. The

7   plaintiffs also point to the videotape as evidence that Mr. Keal may have had vomit on his face. Dkt.

8   242 at 6.

9        The Court notes that of these witnesses, only two mention vomiting in their statements.

10  David Chuyeshkou does not contend that he witnessed Mr. Keal vomit. Instead, he contends that

11  Correction Officer Prose told Mr. Chuyeshkou's neighbor that the there was vomit in the day room.

12  Dkt. 217-2, Exh. 3 at 7. Viewed in the light most favorable to the plaintiffs, this statement does not

13  demonstrate that Mr. Keal vomited. Randy Vance[1] does state that he personally witnessed Mr. Keal

14  vomit. *Id.* at 8. From the narrative provided, it appears that this occurred before Mr. Keal was

15  transported and placed in the spit sock. Based upon a review of the videotape, it does not appear that

16  there was vomit on Mr. Keal's face or clothing or on the floor. More importantly, the plaintiffs offer

17  no evidence that Mr. Keal actually choked or suffocated and therefore fail to create a genuine issue

18  of material fact as to whether Mr. Keal had a serious medical need in this regard.

19       Even if the plaintiffs could establish a serious medical need, they fail to demonstrate that Ms.

20  Ellis was deliberately indifferent to such a need. The Report and Recommendation notes that Ms.

21  Ellis's evaluation of Mr. Keal at the scene was that he had not vomited and showed no sign of

22  foaming from the mouth or gagging. Dkt. 235 at 5. Therefore, the Court agrees with the Report and

23  Recommendation's conclusion that if even if use of the spit sock were sufficiently serious, the

24  plaintiffs fail to establish deliberate indifference.

25       **3. Restraints**

26  ──────────────────────

27       [1] It is difficult to discern, from the handwritten statement, the proper spelling of this individual's last name.

28  ORDER
    Page 4

1    The plaintiffs contend that Mr. Keal suffered injury as a result of handcuffs and restraints.

2    Specifically, the plaintiffs contend that Mr. Keal suffered back and head injuries and lacerations to his

3    ankles and wrists. Dkt. 242 at 3-4. The plaintiffs offer no evidence that these injuries were

4    sufficiently serious to constitute a serious medical need and therefore cannot withstand the motion

5    for summary judgment on this basis.

6         **4. Seizure**

7         The plaintiffs contest the opinion of Dr. Michael J. Doherty, who reviewed the videotape of

8    the event. Dkt. 195 at 3. Dr. Doherty concluded that it was unlikely that Mr. Keal suffered a seizure

9    because Mr. Keal's fall to the ground was slow, there was no obvious clonic or tonic phase, Mr.

10   Keal's eyes were shut, the alleged seizure lasted much longer than a typical seizure (ninety seconds),

11   and Mr. Keal was able to walk without assistance soon after the alleged seizure. Dkt. 195 at 3-4. To

12   rebut this opinion, the plaintiffs contend that Mr. Keal suffered several seizures, that the first seizure

13   only lasted ninety seconds, and that Mr. Keal's fall to the ground was only three seconds. Dkt. 242 at

14   4. These factual allegations do not contradict Dr. Doherty's opinion and do not create a genuine

15   issue of material fact precluding summary judgment.

16        In addition, Dr. Doherty's opinion is consistent with evaluations of Mr. Keal after the event.

17   Ms. Ellis observed and treated Mr. Keal after the alleged seizure and diagnosed his condition as

18   "pseudoseizure/malingering." Dkt. 196 at 2. John Joseph, an advanced registered nurse practitioner,

19   also concluded that Mr. Keal had not truly suffered a seizure, but it is unclear whether this

20   conclusion is based upon John Joseph's observation of Mr. Keal or upon a review of another nurse's

21   notes. *See* Dkt. 197. This evidence, when viewed as a whole, leaves no genuine issue of material fact

22   as to whether Mr. Keal suffered a seizure.

23        **5. Care During and After Seizure**

24        The plaintiffs object to the Report and Recommendation, contending that Ms. Ellis did not

25   exercise the requisite level of care during and after Mr. Keal's alleged seizure. Specifically, the

26   plaintiffs contend that Mr. Keal was not examined after the seizure and that Ms. Ellis did not

27

28   ORDER
     Page 5

1    exercise proper care by cradling Mr. Keal's head.  Dkt. 242 5, 10. These contentions are not

2    supported by the facts. Heidi Malloque, a fellow treatment provider, placed a soft backed book under

3    Mr. Keal's head as padding until a pillow arrived. Dkt. 193 at 3. After the alleged seizure, Mr. Keal

4    was seen by Phyllis Ellis and John Joseph. *See* Dkt. 196, 197. The plaintiffs fail to establish that Ms.

5    Ellis's treatment of Mr. Keal during and after the alleged seizure constitutes deliberate indifference to

6    a serious medical need.

7             **6. Statements of Lucia Wakeen and Margie Messinger**

8             In support of their opposition to the Motion for Summary Judgment, the plaintiffs offered the

9    unsworn statements of Lucia Wakeen, LPN and Margie Messinger, CNA. The Report and

10   Recommendation concluded that these statements should not be considered because they were

11   unsworn. Dkt. 235 at 7.  The Report and Recommendation also concludes that consideration of the

12   statements would not change the outcome. *Id.*

13            In support of their objections, the plaintiffs again offer statements from Lucia Wakeen, LPN

14   and Margie Messinger, CNA. *See* 242, Exh. 6. These statements are signed under penalty of perjury.

15   *Id.* According to the statements, Lucia Wakeen and Margie Messinger both reviewed a videotape of

16   the event and are of the opinion that Mr. Keal suffered a seizure. *See id.* The plaintiffs fail to

17   demonstrate that these individuals are qualified to diagnose seizures. Moreover, these opinions are

18   not supported by the treatment providers who actually evaluated Mr. Keal during and after the

19   incident. Finally, even if this evidence were sufficient to establish the first prong of the plaintiffs'

20   claim, a serious medical need, it does not demonstrate that Ms. Ellis acted with deliberate

21   indifference. The Court should therefore adopt the Report and Recommendation in this regard.

22   **D. PLAINTIFF DEBORAH KEAL'S CLAIMS**

23            The Report and Recommendation does not distinguish between Mr. Keal's claims and Ms.

24   Keal's claims but recommends that Defendant Ellis be dismissed from the case entirely. Dkt. 235-2.

25   In her Motion for Summary Judgment, Ms. Ellis contends that the plaintiffs fail to allege any acts or

26   omissions pertaining to Ms. Keal. Dkt. 201 at 2. The plaintiffs' objections do not mention claims

27

28   ORDER
     Page 6

specific to Ms. Keal. The Court should therefore grant the motion as to Ms. Keal's claims against the defendant.

## III. ORDER

The Court, having reviewed the file the Report and Recommendation of Magistrate Judge J. Kelley Arnold (Dkt. 235), the plaintiffs' objections to the Report and Recommendation, and the remaining record, does hereby find and **ORDER**:

      (1)      The Court adopts the Report and Recommendation (Dkt. 235);

      (2)      Defendant Ellis's motion for summary judgment is **GRANTED**; and

      (3)      Defendant Ellis is dismissed from this action with prejudice.

The Clerk is directed to send copies of this Order to plaintiffs, counsel for any defendants who have appeared, and to the Hon. J. Kelley Arnold.

DATED this 22nd day of February, 2007.

_Robert J. Bryan_
Robert J. Bryan
United States District Judge

ORDER
Page 7