UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD AND DEBORAH KEAL,

Plaintiffs,

v.

STATE OF WASHINGTON, *et al.*,

Defendants.

Case No. C05-5737RJB

ORDER ADOPTING IN PART AND RE-NOTING IN PART REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation of Magistrate Judge J. Kelley Arnold (Dkt. 240). The Court has considered the Report and Recommendation, the defendants' objections (Dkt. 244), the plaintiffs' objections (Dkt. 246, 248), and the remainder of the file herein.

**I. BACKGROUND**

The complaint in this action was filed in November of 2005. Dkt. 5. The complaint was deemed deficient, and the plaintiffs were ordered to file an amended complaint. Dkt. 6. That complaint was also deficient, and the plaintiffs filed a second amended complaint on October 24, 2006. Dkt. 183. Two individual defendants in this action have been dismissed, and two have not appeared. *See* Dkt. 247, 249. On November 22, 2006, the remaining thirty-eight defendants in this case moved for summary judgment. Dkt. 204. The Report and Recommendation recommends that

ORDER
Page 1

the motion be granted in part and denied in part. Dkt. 240. The plaintiffs and defendants have filed objections. Dkt. 244, 246, 248.

## II. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in

ORDER
Page 2

1  affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*,
2  497 U.S. 871, 888-89 (1990).

3  **B. PATRICIA RIMA**

4      The plaintiffs' claims against Patricia Rima are as follows:

5      Patricia Rima is responsible for the administration and over-seeing of Medical treatment at the Washington State Penitentiary, who evaluates emergency intake grievances and investigation of healthcare issues. On 11-20-03, she was informed of Plaintiff's neck injury by way of emergency grievance, Sgt. Wheeler and Montoya yet, refused Mr. Keal access to Medical for treatment. During the course of Mr. Keel's [sic] stay at this facility deprived him of adequate medical care on and after 2-2-04 for a hip injury. She directly reviewed and investigated both grievances logs No. 0402905 & 0402710. Further failed to transfer Mr. Keal per DOC 610.110 for proper treatment. Thus violating his 8th amendment constitutional rights by deliberate indifference up to 10-2-04.

10  Dkt. 183 at 13.

11      As the Report and Recommendation makes clear, Patricia Rima does not provide medical
12  treatment, and her supervisory role is an insufficient basis for liability under 42 U.S.C. §1983. Dkt.
13  240 at 5. The plaintiffs' objections fail to state any other basis for holding this defendant liable for
14  Mr. Keal's medical treatment. *See* Dkt. 246 at 2.

15      The Report and Recommendation also concludes that the plaintiffs' claims regarding Patricia
16  Rima's handling of grievances fail because the plaintiffs have no right to a grievance system and that
17  the plaintiffs' claims regarding failure to transfer the plaintiff for medical treatment fail because there
18  is no evidence that a transfer was required or medically necessary. Dkt. 240 at 6. The plaintiffs'
19  objections do not refute this conclusion, and the Report and Recommendation should therefore be
20  adopted.

21  **C. SHERRY HARTFORD**

22      The plaintiffs' claims against this defendant are as follows:

23      Sherry Hartford is responsible for coordinating, supervising religious dispute resolutions, and making decisions on the appeal of religious issues concerning an inmate's right to practice their [sic] faith. She has been notified of Muslims being denied the right to pray on the job and on the big yard at Washington State Penitentiary prior to December 2003 again. Finally, issuing a memo Aug. 26, 2004 only after Aug. 14, 2004 letter by Plaintiff. DOC 560.200 dictates the equal protection/treatment of those similarly situated with religious beliefs and practices. A halal diet is similar to kosher which those of the Jewish faith receive. Defendant is at the second level of appeal for religious rights. Plaintiff has a right to proper diet in

accordance with his religious beliefs and practices.

Dkt. 183 at 11. The Report and Recommendation concludes that Sherry Hartford is sued only in her supervisory capacity because there is no evidence that she played a role in the alleged denial of Mr. Keal's right to pray with others and to receive a Halal diet. Dkt. 240 at 6. The objections assert that this defendant knew of these alleged denials and was a participant rather than merely a supervisor, but the plaintiffs fail to cite evidence supporting these assertions. The Report and Recommendation should be granted in this regard.

**D. RICHARD MORGAN**

The plaintiffs' claims against Richard Morgan are based upon this defendant's alleged "responsib[ility] for the safety, welfare, [and] security of inmates," awareness of alleged constitutional violations, and role in the grievance process. Dkt. 183 at 11. As noted by the Report and Recommendation, the plaintiffs' conclusory arguments are an insufficient basis for imposing liability. The Report and Recommendation should be granted as to Richard Morgan.

**E. SHARON MORGAN**

Sharon Morgan is in charge of administration and oversight of medical personnel at Clallam Bay Correction Center and is sued on this basis of her role as supervisor and her involvement in the grievance process. *See* Dkt. 183 at 17-18. The objections fail to demonstrate any other involvement of Ms. Morgan in the alleged violation of the plaintiffs' constitutional rights, and this defendant should therefore be dismissed.

**F. SANDRA CARTER**

The plaintiffs allege that Sandra Carter denied Mr. Keal a Halal diet, an Islamic sponsor, access to a dietician, access to the law library, medical treatment, and time in the yard. Dkt. 183 at 13-14. The plaintiffs also contend that Sandra Carter mishandled Mr. Keal's grievances. *Id.* After reviewing the plaintiff's exhibits in support of these allegations, the Report and Recommendation concludes that the plaintiffs' claims against this defendant are based solely on the theory of *respondeat superior*. In their objections, the plaintiffs reiterate that this defendant is involved in the

ORDER
Page 4

grievance process. The plaintiffs cannot establish a constitutional right to a prison grievance system. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). The plaintiffs having failed to establish any other basis for imposing liability on this defendant, the Report and Recommendation should be adopted in this regard.

## G. HAROLD CLARKE

The Report and Recommendation concludes that the plaintiffs' claims against this defendant are based solely on the theory of *respondeat superior*. Dkt. 240 at 8. The plaintiffs' objections assert that Harold Clarke had direct knowledge of alleged constitutional violations by other individuals and was involved in the grievance process. The plaintiffs fail to demonstrate Harold Clarke's personal involvement in the violation of constitutional rights, and the Report and Recommendation should be adopted in this regard.

## H. ELDON VAIL

The Report and Recommendation recommends that the defendants' motion be granted as to Eldon Vail because the plaintiffs' allegations, that Mr. Vail placed Mr. Keal on Intensive Management Status and failed to release him from such status, are not supported with evidence of Mr. Vail's personal participation. In their objections, the plaintiffs allege that Mr. Vail is involved in the grievance process and had direct knowledge of alleged constitutional violations by other individuals. This is an insufficient basis for imposing liability, and the Report and Recommendation should be granted in this regard.

## I. DEAN MASON

The allegations against Dean Mason in the Amended Complaint are based upon Mr. Mason's involvement in the grievance process. As the Report and Recommendation concludes, the plaintiffs fail to demonstrate that Mr. Mason personally participated in a violation of their constitutional rights. The plaintiffs contend that the Report and Recommendation is contradictory because it notes that there is no constitutional right to a grievance procedure but that prisoners cannot be retaliated against for using grievance procedures. *See, e.g.*, Dkt. 240 at 27. The Court does not find these

ORDER
Page 5

statements of the law to be contradictory, and the plaintiffs have not demonstrated that Dean Mason retaliated against Mr. Keal for use of the grievance procedure.

**J. HALAL DIET**

According to the Amended Complaint, Daniel Williams, William Peck, Donald Duncan, and Steven Brill violated Mr. Keal's constitutional rights by denying Mr. Keal a Halal diet that includes meat. The Report and Recommendation concludes that the plaintiffs fail to demonstrate that receiving an ovo-lato diet that does not contain meat violated Mr. Keal's constitutional rights. Dkt. 240 at 10. The plaintiffs offer no authority for the contention that Muslim prisoners must be provided Halal meat, and the Third Circuit has held that providing vegetarian meals to Muslim prisoners is sufficient. *See Williams v. Morton*, 343 F.3d 212, 218 (3d Cir.2003) ("[P]roviding vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget."). The plaintiffs' having failed to demonstrate a constitutional right to Halal meat, the Court should adopt the Report and Recommendation as to this claim.

**K. RELIGIOUS SPONSOR**

The plaintiffs allege that Mr. Keal was wrongfully denied a Muslim sponsor. The Report and Recommendation concludes that summary judgment on this claim is proper because the Constitution does not mandate that prison officials provide sponsors for every religious group. Dkt. 240 at 11. The plaintiffs offer no authority to rebut this conclusion, and the Report and Recommendation should be granted in this regard.

**L. PRAYER**

The Report and Recommendation determines that the plaintiffs' claims regarding payer at work and in the yard are unexhausted because Mr. Keal failed to timely file a grievance. Dkt. 240 at 11. The plaintiffs' objections do not refute this conclusion. This claim should be dismissed without prejudice.

**M. EXCESSIVE FORCE**

1    The plaintiffs bring claims under 42 U.S.C. §1983, contending that the use of force by defendants Mark Abbott and Steve Weed was excessive.

**1. Mark Abbott**

The plaintiffs' allegation against Mark Abbott is as follows:

> Mark Abbott is responsible for an excessive use of force upon MR. KEAL on or about 2-2-04, resulting in a hip injury. Defendant acted under the Color of State law, the legitimacy of the Government and were purporting to act there under [sic], violating Plaintiff(s) 8th and 14th U.S. Constitutional Amendment Right(s) and is being sued in his/her official and individual capacity.

Dkt. 183 at 12. This allegation stems from an incident in the "Big Yard." Mr. Keal was involved in a fight with another inmate and ordered to stop fighting and lie on the ground. Mr. Keal did not comply and instead kneeled on one knee with his back to the corrections officers. In the plaintiffs' objections Mr. Keal contends that he was attempting to lie down and was tackled by Mark Abbott. Dkt. 246 at 1.

To support a claim for cruel and unusual punishment, the plaintiffs must "allege and prove the unnecessary and wanton infliction of pain," and courts should pay "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Where the conduct is taken in response to disturbance threatening security of inmates and prison staff, the question is whether "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 321. As detailed in the Report and Recommendation, the plaintiffs fail to demonstrate that the force used to acquire Mr. Keal's compliance with the order to lie down was not part of a good faith effort to restore discipline. Dkt. 240 at 4. The Report and Recommendation should be granted in this regard, and the motion should be granted as to Mark Abbott.

**2. Steve Weed**

The Report and Recommendation recommends that the Motion for Summary Judgment be denied as to defendant Steve Weed because the defendants' briefing on Defendants' Motion for Summary Judgment did not address the plaintiffs' excessive force claim against Steve Weed. Dkt.

ORDER
Page 7

240 at 28. While the motion purports to address all claims, the defendants admit that the motion omits the claim of excessive force on November 17, 2003. The defendants object to the Report and Recommendation on the grounds that this claim was already dismissed and no briefing was necessary. Dkt. 244 at 2. The defendants ask that if the Court determines that the excessive force claim has not been dismissed, the Court should allow supplemental briefing on the issue. *Id.* at 9.

On June 9, 2006, Steve Weed and other defendants moved for judgment on the pleadings, in part on the grounds that Mr. Keal failed to exhaust grievance procedures. Dkt. 137 at 4. In addressing whether the plaintiffs' excessive force claims were exhausted, the Report and Recommendation concluded that the plaintiffs' excessive force claims were exhausted only with respect to an incident occurring on February 2, 2004. *See* Dkt. 162 at 10 ("There is only one grievance[] supporting the third cause of action, excessive use of force. (Dkt. # 137, Exhibit 1, Attachments F). This issue is confined to the use of force in the Big Yard at the Washington State Penitentiary on February 2nd, 2004."). This Court adopted the Report and Recommendation. Dkt. 176.

The plaintiffs were allowed to amend the complaint a second time as to certain defendants and certain allegations; they were not explicitly permitted to amend their excessive force allegations or their allegations against Steve Weed. *See* Dkt. 176 at 2. The Second Amended Complaint's allegations against Steve Weed are as follows:

> Steve Weed is responsible for excessive use of force upon MR. KEAL on 11-17-03 resulting in a severe neck injury. Upon MR. KEAL'S return to (CBCC) 1-5-05 to 9-12-05, he subjected him to ongoing pattern of practice retaliatory harassment, threats, intimidation and theft of legal documents. Defendant acted under the Color of State law, the legitimacy of the Government and were purporting to act there under [sic], violating Plaintiff(s) 8th and 14th U.S. Constitutional Amendment Right(s) and is being sued in his/her official and individual capacity.

Dkt. 183 at 14. The defendants' answer addressed these allegations, denying that Steve Weed's use of force was excessive. Dkt. 187 at 7.

The plaintiffs' allegations, assuming that the plaintiffs were permitted to amend their excessive force claim against Steve Weed, are theoretically still subject to the earlier ruling that only

ORDER
Page 8

the excessive force claim pertaining to the Big Yard in February of 2004 was exhausted. It appears, however, that the parties have not yet been fully heard on the plaintiffs' claims regarding Steve Weed's alleged use of force on November 17, 2003. The defendants ask the Court to allow supplemental briefing on this issue rather than allow this claim to proceed to trial. In the interests of fairness to both parties, the Court should allow the parties to provide supplemental briefing on the plaintiffs' excessive force claim against Steve Weed stemming from events that occurred on November 17, 2003. The Court should therefore decline to adopt the Report and Recommendation in this regard and establish a briefing schedule for the parties to be heard on this limited issue.

**N. RAMADAN 2003**

The plaintiffs contend that Defendant Donald Duncan denied Mr. Keal the ability to fast during Ramadan in 2003 because Mr. Keal was not provided sack lunches. Dkt. 183 at 19. Mr. Keal admits that in the months before Ramadan, he completed a religious preference form indicating that he was Rastafarian. Dkt. 246-2, Exh. 1 at 5. In the objections, Mr. Keal contends that he signed the form under duress. The basis for this contention is unclear, but it appears that Mr. Keal felt compelled to change his religious preference in order to justify his refusal to cut his dreadlocks, in violation of Department of Corrections policy, and to seek release from Intensive Management Status. *Id.* As explained below, Mr. Keal fails to justify his violation of the policy on dreadlocks. Mr. Keal fails to offer evidence to create a genuine issue of material fact as to whether the Rastafarian religious preference was made under duress. There being no dispute that Mr. Keal professed to be Rastafarian during Ramadan in 2003, the Report and Recommendation should be adopted, and summary judgment should be granted on this claim.

**O. RAMADAN 2005**

Prison inmates retain their First Amendment right to practice their religion freely, but that right is limited by virtue of their incarceration. *Friend v. Kolodzieczak*, 923 F.2d 126, 127 (9th Cir. 1991). To establish a free exercise violation, plaintiffs must show that the defendants burdened the practice of religion by preventing conduct mandated by faith, without any justification reasonably

ORDER
Page 9

related to legitimate penological interests. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). To determine whether the conduct of prison officials was reasonable, courts consider several factors, including whether the regulation has a logical connection with a legitimate government interest; whether the inmate has an alternative means to exercise the asserted right; and the severity of the impact that accommodating the inmate's would have upon prison resources. *Id.*

The plaintiffs' claim against Steven Brill regarding the burden of Mr. Keal's religious practice is as follows:

> MR. KEAL is being denied a Halal meat diet and has went without meat while Jewish inmates receive a similar diet "Kosher," as a Muslim Keal has had not [sic] Islamic sponsor and was denied the right to fast 5 days of Ramadan as well as the right to eat the food from Eid Al Fitr Feast on or about 10-8-05. See grievance log #0523458.

Dkt. 183 at 24. The defendants contend that Steven Brill is entitled to summary judgment because he is entitled to qualified immunity and because the plaintiffs fail to sufficiently allege that Mr. Keal's practice of religion was intentionally and substantially burdened.

The defense of qualified immunity has three steps. First, there must be a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At this stage, the facts are viewed in the light most favorable to the injured party. *Id.* Absent such a violation, there is no need to pursue the remaining qualified immunity analysis. *Id.* Second, the right must be so clearly established that a reasonable officer would be on notice of its existence and parameters. *Id.* at 199; *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). This burden rests with the plaintiff. *Romero*, 931 F.2d at 627. Third, the officer must demonstrate that a reasonable officer could have believed the conduct was lawful. *Id.* With respect to qualified immunity, the Report and Recommendation notes that the defendants "have not supplied the exhibits they rely on for the proposition that the named defendant could have thought his actions constitutional." Dkt. 240 at 13-14.

**1. Constitutional Violation**

The Report and Recommendation concludes that the plaintiffs successfully allege a constitutional burden by alleging that Mr. Keal was denied the ability to fast during Ramadan because he was not provided sack lunches despite properly declaring his religious preference and

ORDER
Page 10

requesting sack lunches. Dkt. 240 at 13. The defendants object on the grounds that there is no evidence that the denial was intentional and because the denial lasted only five days. Dkt. 244 at 4. The defendant's cite Mr. Keal's deposition statement acknowledging that he may have been denied Ramadan due to a miscommunication. Dkt. 204 at 6. This evidence was not provided to the Court. Dkt. 244 at 5 n.1.

The defendants do not offer authority for the proposition that the burden on the plaintiff's free exercise must be intentional. *See* Dkt. 244. 42 U.S.C. §1983 does not impose an intent requirement, but the Supreme Court has cautioned that the purpose of 42 U.S.C. §1983 is to remedy "affirmative abuse[s] of power." *See Daniels v. Williams*, 474 U.S. 327, 329-30 (1986). The state of mind requirement is determined by the underlying constitutional right and not by Section 1983 itself. *See id.* at 330. For example, in the context of the Due Process Clause, the word "deprive" has been deemed to connote more than mere negligence. *Id.* The Court is aware of no binding authority mandating that burdens on free exercise be intentional.

In support of their contention that inability to observe Ramadan for five days is not a sufficiently substantial burden on free exercise, the defendants cite *Boyd v. Lehman*, No. C05-0020, slip op. (W.D.Wash. May 19, 2006). In that case, the plaintiff was served meals before sunset for two days of Ramadan and provided sack lunches to eat later in the evening. *Id.* at 2 n.2. In that case, the court concluded as follows:

> Plaintiff's assertions to the contrary, there is no evidence in the record that defendant Haptonstall acted intentionally to burden the practice of plaintiff's religion. The record instead supports the conclusion that the issue regarding the timing of the evening meal was, at most, a mistake, and does not rise to the level of a constitutional violation. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's First Amendment claim as it pertains to fasting during Ramadan 2004.

*Id.* at 9. This case is readily distinguishable. Here, Mr. Keal was denied sack lunches altogether, the denial lasted five days rather than two, and there is no evidence in the record supporting the conclusion that the denial was a mere mistake. The Court should adopt the Report and Recommendation and hold that the plaintiffs have sufficiently alleged that Steven Brill violated Mr.

ORDER
Page 11

Keal's freedom of religious practice.

**2. Clearly Established and Reasonable Belief**

Under established law, prison authorities must accommodate prisoners' rights to receive a diet that "satisfies the dietary laws of their religion[s]." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). What is not clearly established, however, is whether a temporary and unintentional deprivation of the right to receive a religious meal violates the Free Establishment Clause. The word "prohibiting" in the Free Exercise Clause connotes more than mere negligence. *See Lewis v. Mitchell*, 416 F. Supp. 2d 935, 944 (S.D.Cal. 2005); *Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D.Va. 1995). A reasonable prison official could therefore conclude that an unintentional failure to provide a religious meal did not arise to a constitutional violation. In this case, there is no evidence that the failure to provide Mr. Keal with sack lunches was anything other than mere inadvertence. The Court should therefore hold that Steven Brill is entitled to qualified immunity on this claim.

**P. DREADLOCKS**

The Report and Recommendation concludes that the Department of Corrections policy prohibiting inmates from wearing their hair in braids or ties is reasonably related to legitimate penological interests. Dkt. 240 at 14. The Report and Recommendation urges the Court to grant the Motion for Summary Judgment as to Defendants Carter, Blakeman, and Moore in this regard. *Id.* at 241. The plaintiffs object on the grounds that the policy against dreadlocks impacted African Americans more severely. Dkt. 246 at 6. Specifically, the plaintiffs contend that African Americans wearing dreadlocks are required to cut their hair to comply with the policy whereas other racial groups can simply comb their hair to remove dreadlocks. *Id.* at 7.

Proof of racially discriminatory intent or purpose is required to uphold a racial discrimination claim, and mere evidence of disparate impact on minorities is insufficient. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Because the plaintiffs fail to demonstrate the requisite discriminatory intent or purpose, the Report and Recommendation should be adopted as to this

ORDER
Page 12

claim.

**Q. NO MOVEMENT**

The Report and Recommendation recommends that the Court deny the Motion for Summary Judgment as to the plaintiffs' claim that Mr. Keal was held on no movement status in violation of the Eighth Amendment. Dkt. 240 at 16. According to the Report and Recommendation, it is impossible to discern from the record exactly how long Mr. Keal was on no movement status, beginning on August 26, 2003, or whether the defendants' subjective motivation behind the no movement status was deliberately indifferent. *Id.* The Report and Recommendation would deny qualified immunity on the grounds that the defendants should have been on notice that they could not deny outdoor exercise for a prolonged period of time exceeding six weeks. Dkt. 240 at 17.

The Report and Recommendation cites *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000), and *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979). In *Lopez*, the court reversed summary judgment in favor of the defendant on the claim that a prisoner was denied outside exercise for over six weeks for the prisoner's own protection after he suffered an injury. *Lopez*, 203 F.3d at 1133. In *Spain*, the court held that "it was cruel and unusual punishment for a prisoner to be confined for a period of years [in order to prevent violent attacks to, and by, the inmates] without opportunity to go outside except for occasional court appearances, attorney interviews, and hospital appointments." *Spain*, 600 F.2d at 200.

This case is distinguishable because Mr. Keal was denied the opportunity for outdoor exercise because he was in violation of a lawful Department of Corrections policy. Mr. Keal was capable of lifting the ban on outdoor exercise by complying with the policy against dreadlocks, unlike the prisoners in *Lopez* and *Spain*, who were denied outside recreation due to past events. Mr. Keal was placed on no movement status because he failed to remove his dreadlocks as required Department of Corrections policy prohibiting inmates from wearing their hair in braids or ties, a policy that the Court has determined serves penological interests as a matter of law. Even if the Court were to agree that Mr. Keal states a constitutional violation for prolonged placement on no

ORDER
Page 13

movement status, the Court determines that a reasonable officer could have believed that placement of Mr. Keal on no movement status was lawful in light of Mr. Keal's power to terminate the no movement status by complying with the lawful policy prohibiting dreadlocks. The Court should therefore decline to adopt the Report and Recommendation and hold that Defendant Blakeman is entitled to summary judgment on this claim.

**R. VERBAL MISCONDUCT**

The plaintiffs contend that Steven Blakeman, Brian Zavodny, Randall Judd, and Steven Weed made racial slurs or verbal threats. Dkt. 183 at 14, 20, 23. As the Report and Recommendation notes, verbal harassment does not rise to the level of a constitutional violation. Dkt. 240 at 17. The legal authority cited in the objections does not contradict this statement of the law. *See Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995) (petition for writ of *habeas corpus*). The Report and Recommendation should be adopted as to claims of verbal misconduct.

**S. ACCESS TO COURTS**

The plaintiffs contend that Mr. Keal was denied access to courts. The Report and Recommendation concludes that Mr. Keal fails to demonstrate actual injury. Dkt. 240 at 17. The objections offer two pieces of evidence to refute this conclusion, both of which were addressed in the Report and Recommendation and both of which demonstrate Mr. Keal's ability to file motions and otherwise access the court. Dkt. 240 at 18. The Report and Recommendation should be adopted as to this claim.

**T. MEDICAL CLAIMS**

The plaintiffs assert that the medical treatment provided by Alena Montoya, Robert Monger, John Joseph, Allen Hayter, Robert Signor, and Lisa Long was inadequate.

**1. Alena Montoya**

The plaintiffs' claims against Alena Montoya are as follows:

> Alena Montoya is responsible for internal daily operations of security at the Penitentiary. On or about 11-19-03 MR. KEAL arrived on the chain from Clallam Bay Correction Center complaining of a severe neck injury. Lt. Montoya caked (CBCC) who denied any event had taken place and even though MR. KEAL called a medical emergency, she refused to

ORDER
Page 14

authorize clearance to medical for an examination.

Dkt. 183 at 12. The Report and Recommendation concludes that summary judgment is proper as to Alena Montoya because Mr. Keal was seen on November 20, 2003, the day Mr. Keal arrived at the Washington State Penitentiary, and six days thereafter. Dkt. 240 at 19. The objections acknowledge that Mr. Keal was seen on November 20, 2003, but contend that treatment was delayed from November 17, 2003, to November 25, 2003. Dkt. 246 at 8. The objections cite witness statements (Dkt. 216-16, Exh. 36 at 11-15) and Mr. Keal's affidavit (Dkt. 246-3, Exh. 2) as evidence supporting this claim. The witness statements are not signed under penalty of perjury. *See* Dkt. 216-16, Exh. 36 at 11-15. Mr. Keal's affidavit states that Mr. Keal was told that emergency treatment was not necessary and that a final decision from Alena Montoya was required. Dkt. 246-3, Exh. 2. The plaintiffs fail to demonstrate that Mr. Keal actually declared an emergency during this time period. *See* Dkt. 204-10 at 6. The Report and Recommendation should be adopted as to this claim.

**2. Robert Monger**

The plaintiffs' allege that Robert Monger improperly ordered the use of leg restraints, handcuffs, and a spit sock during an alleged seizure in March of 2005. Dkt. 183 at 18. The Court has already ruled that the plaintiffs fail to demonstrate that Mr. Keal injuries were sufficiently serious to amount to a violation of the Eighth Amendment. Dkt. 247 at 4-6, Dkt. 249 at 3-5. The motion should be granted as to this defendant.

**3. John Joseph, Allen Hayter, Robert Signor, and Lisa Long**

The Report and Recommendation thoroughly addresses the plaintiffs' claims that John Joseph, Allen Hayter, Robert Signor, and Lisa Long were deliberately indifferent to serious medical needs.

**a. Hip Pain**

The Report and Recommendation concludes that summary judgment is proper on the claim that the defendants were deliberately indifferent to Mr. Keal's hip pain because the plaintiff was seen and his complaint was evaluated. Dkt. 240 at 22. The plaintiffs contend that failure to prescribe

ORDER
Page 15

physical therapy or medication after Mr. Keal's MRI results came back normal constitutes deliberate indifference. Dkt. 246 at 10. The plaintiffs may disagree with the defendants' determination that no further treatment was warranted in light of Mr. Keal's MRI result, but such a disagreement does not support a claim under 42 U.S.C. §1983. The Report and Recommendation should be adopted as to this claim.

### b. Allergies

The Report and Recommendation concludes that Mr. Keal was treated on both occasions when he reported allergy problems and that the plaintiffs fail to demonstrate that Mr. Keal suffered injury. The objections evidence the plaintiffs' disagreement with John Joseph's lack of treatment of Mr. Keal's allergies but fail to offer any specific instance when Mr. Keal's allergy complaints were not addressed or evidence that Mr. Keal's allergies resulted in seizures or other injury. The Report and Recommendation should be adopted as to this claim.

### c. Neck Pain

The Report and Recommendation concludes that Mr. Keal's neck condition "requires periodic medical treatment" and that Mr. Keal has received such treatment. Dkt. 240 at 23. In their objections, the plaintiffs contend that x-rays of Mr. Keal were ordered on November 26, 2003, but that Mr. Keal was not x-rayed until July of 2005. Dkt. 246 at 11. The plaintiffs fail to demonstrate that this delay had any effect on Mr. Keal's condition. The Report and Recommendation should be adopted as to this claim.

### d. Hypoglycemia

The Report and Recommendation deems the plaintiffs' arguments regarding Mr. Keal's alleged hypoglycemia as a difference of opinion with Dr. Hopfner, who is not a party to this action and determined that Mr. Keal's hypoglycemia did not justify extra food. Dkt. 240 at 24. In the objections, the plaintiffs point to the fact that Mr. Keal was provided extra food at other facilities and contend that Mr. Keal suffered seizures and rapid weight loss. The plaintiffs fail to support this contention with a citation to the record, and the Report and Recommendation should be adopted as

to this claim.

### e. Seizures

As noted by the Report and Recommendation, various medical providers suspected that Mr. Keal was pretending to have seizures. Dkt. 240 at 24-26. The plaintiffs dispute this evaluation and the type of care Mr. Keal received for his alleged seizures but do not demonstrate deliberate indifference by the defendants. The Report and Recommendation should be adopted as to this claim.

## U. RETALIATION

The Report and Recommendation concludes that the plaintiffs' retaliation claims cannot survive summary judgment because Mr. Keal was infracted for filing false grievances and there is no evidence that Mr. Keal was infracted merely for filing grievances. Dkt. 240 at 26-27. To rebut this conclusion, the plaintiffs contend that prison officials "have [a] long history in [sic] protecting their colleagues from any possible litigation by attempting to discredit inmates who lodge complaints of any nature against them." Dkt. 246 at 12. The plaintiffs' mere belief or suspicion that the infractions were retaliatory is not enough to withstand summary judgment. The Report and Recommendation should be adopted as to this claim.

## V. VISITATION

The Report and Recommendation concludes that Ms. Keal cannot establish a due process violation for denial of visitation with her husband because she was afforded, and utilized, an appeal process. Dkt. 240. In the objections, the plaintiffs do not dispute that Ms. Keal was able to appeal the termination of visitation. Dkt. 246 at 28. The Report and Recommendation should be adopted as to this claim.

## W. REMAINING DEFENDANTS

### 1. Bob Moore and Gale D. Munden

The Report and Recommendation recommends that the motion be granted in part and denied in part as to Defendants Bob Moore and Gale D. Munden. *See, e.g.*, Dkt. 240 at 11-12, 14-15, 17, 29. These defendants have not appeared in this action and have not moved for summary judgment.

ORDER
Page 17

It appears that the plaintiffs provided marshal service forms for these defendants. *See* Order Directing Service by U.S. Marshal, Dkt. 9 at 1 ("By the court[']s count there are 43 named defendants in this action. Plaintiff has provided 43 marshal service forms."). Bob Moore was not served, however, because he was not at the address provided in the marshal service form. Dkt. 54. Gale D. Munden was also not served. Dkt. 250 (entered March 21, 2007). The plaintiffs should be afforded an opportunity to effect service on these defendants and to demonstrate why the case should not be dismissed for failure to prosecute as to these defendants.

**2. Steve Ramsey, Susan Winters, Bryan McGarvie, and Les Schneider**

The Report and Recommendation concludes that summary judgment is proper as to these defendants because liability is based upon *respondeat superior* and placement of Mr. Keal on Intensive Management Status. Dkt. 240 at 28-29. The objections fail to refute the conclusion of the Report and Recommendation, that the plaintiffs fail to establish a liberty interest in remaining in the general population, and summary judgment is therefore proper as to these defendants.

### **III. ORDER**

The Court, having reviewed the file the Report and Recommendation of Magistrate Judge J. Kelley Arnold (Dkt. 240), the objections to the Report and Recommendation, and the remaining record, does hereby find and **ORDER**:

    (1) The Court **ADOPTS in part** the Report and Recommendation (Dkt. 240) as provided herein;

    (2) The Motion for Summary Judgment (Dkt. 204) is **GRANTED** as to the remaining claims and defendants, with the sole exception of the excessive force claim against Steve Weed;

    (3) with respect to the plaintiffs' excessive force claim against Steve Weed, the parties shall provide the Court with supplemental briefing as follows:

        (A) on or before April 6, 2007, the defendants shall supplement Defendants' Motion for Summary Judgment (Dkt. 204) to address the plaintiffs' excessive force claim against Steve Weed for events occurring on November 17, 2003;

        (B) the plaintiffs' response to the defendants' briefing, if any, is due April 23, 2007;

        (c) the defendants' reply, if any, is due April 27, 2007; and

        (D) this portion of the Report and Recommendation is **RE-NOTED** for consideration

on Magistrate Judge Arnold's April 27, 2007, calendar.

(4) on or before April 23, 2007, the plaintiffs are **ORDERED** to

(A) show cause, if any they may have, why the claims against Bob Moore and Gale D. Munden should not be dismissed for failure to prosecute or

(B) effect service on these defendants.

(5) This matter is re-referred to Magistrate Judge J. Kelley Arnold.

The Clerk is directed to send copies of this Order to plaintiffs, counsel for any defendants who have appeared, and to the Hon. J. Kelley Arnold.

DATED this 23nd day of March, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER
Page 19